**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-4137-WJM

WILBER PEREZ LOPEZ,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity as
Warden of the Denver Contract Detention Facility, *et al*.

Respondents.

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Before the Court is Petitioner Wilber Perez Lopez's Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition"). (ECF No. 1.) Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility; George Valdez, in his official capacity as Acting Field Office Director for the Denver Field Office of U.S. Immigration and Customs Enforcement ("ICE"); David Venturella, in his official capacity as Acting Director of ICE; Markwayne Mullin, in his official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"); Todd Blanche, in his official capacity as Attorney General of the United States (collectively, "Respondents" or "the Government") filed a cursory response. (ECF No. 12.) The Court did not order a reply.

For the following reasons, the Petition is granted.

## I. BACKGROUND[1]

Perez Lopez is a native and citizen of Mexico. (ECF No. 1 at 29; *see id.* at 5.) He entered the United States without inspection in August 2007 and has lived in this country since that time. (ECF No. 1 at 5.)

Through a I-589 Form, Perez Lopez sought asylum, withholding of removal, and protection under the Convention Against Torture "based on his sexual orientation, HIV positive status, and fear of prosecution in Mexico." (*Id.*) On April 16, 2026, an Immigration Judge ("IJ") denied the Form I-589 and entered a removal order to Mexico. (*Id.*) The next day, the IJ denied Perez Lopez's first custody redetermination request based on a lack of jurisdiction and stating that he did not file a Form I-286, all without determining whether he was a danger to the safety of the community or presented a risk of flight. (*Id.*) On May 6, 2026, Perez Lopez timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"); his appeal remains pending. (*Id.* at 6.)

Perez Lopez "then renewed his request for custody redetermination under [8 U.S.C.] § 1226(a)." (*Id.*) "Perez Lopez submitted evidence of his pending BIA appeal, letters of community support, no criminal history, the lack of adequate care for his HIV positive status, and his U.S. citizen sponsor and partner's financial ability to support Perez Lopez if released from custody." (*Id.*) He also expressed concern about the adequacy of his medical care because he would receive his medication sporadically rather than every day and that he was quarantined in a unit "with approximately twenty tuberculosis cases despite testing negative." (*Id.*) An IJ held a hearing and denied his

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

renewed custody request, finding that he "pose[s] a risk of flight that no amount of bond can mitigate." (*Id.* at 20.) Specifically, she determined that Perez Lopez's lack of future hearings in immigration court, "limited options to lawfully remain in the United States[,] and the speculative likelihood that an appeal be granted substantially increase his flight risk because he has little incentive to appear for his removal." (*Id.*)

Perez Lopez challenges the legality of his detention, requesting that the Court order Respondents to immediately release him. (*Id.* at 14.)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' " *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

Perez Lopez contends that his detention is unlawful and violates his Fifth Amendment substantive due process rights (Count One) and his procedural due

process rights (Count Two).[2] (ECF No. 1 at 11–13.) The Court agrees with him on both counts.

### A. Fifth Amendment Due Process Claims

Perez Lopez argues that his "continued detention under the August 26, 2026, custody determination violates the Due Process Clause of the Fifth Amendment because it is not supported by an individualized, forward-looking, constitutionally adequate justification for physical detention." (ECF No. 1 at 14.) The Court agrees.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1250 (10th Cir. 2026) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The Tenth Circuit recently explained:

> The Due Process Clause of the Constitution forbids the Government from "depriv[ing]" any "person . . . of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [this] Clause protects." *Zadvydas*, 533 U.S. at 690. Due process requires that, whenever the Government detains somebody, it must have a good reason for doing so. *Id*. If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a "strong special justification." *Id.*

*Id.* at 1249.[3]

[2] Although Perez Lopez argues "it is undisputed that 8 U.S.C. § 1226(a) governs Perez Lopez's detention," (ECF No. 1 at 8), the Court notes that he makes no statutory claim under the Immigraton and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, in this action.

[3] "To the extent it matters," the Tenth Circuit "assume[d] for the sake of argument that questions about the types of justifications capable of supporting detention sound in substantive due process, while questions about procedures used for proving the satisfaction of a given justification sound in procedural due process. In that regard, our discussion of constitutional avoidance sounds in substantive due process." *Id.* at n.12. The Court makes the same assumption for the purposes of resolving the Petition.

The Court will "review the nature and structure of the [IJ's decision] for the minimal indicia of due process." *Mejia v. Baltazar*, 2026 WL 1361514, at *2 (D. Colo. May 15, 2026) (quoting *Lopez v. Paulk*, 830 F. Supp. 3d 1356, 1368 (M.D. Ga. 2026)) (alteration in original). To be clear, the Court does not act as an appellate court in reviewing the IJ's decision. *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under [§ 1226(a)] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole . . . ."). But "[w]hether [a petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review." *Mejia*, 2026 WL 1361514, at *1 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)). And so, "the Court must independently review the IJ bond proceedings and whether the burden of proof [the IJ] used comported with due process." *Lopez*, 830 F. Supp. 3d at 1368.

Under *Mathews v. Eldridge*, courts must consider three factors when evaluating whether a petitioner has made out a procedural due process violation: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

1. <u>Substantive Due Process (Count One)</u>

All three *Mathews* factors support Perez Lopez's claims that the IJ violated his procedural due process rights. Although the *Mathews* factors often apply more readily in the context of procedural due process claims, the first *Mathews* factor sounds in substantive due process.

As to the first factor, Perez Lopez's continued detention undermines his private interest in his physical freedom. A person's physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Vizguerra-Ramirez*, 2025 WL 3653158, at *14 (same); *Carlon v. Kramer*, 2025 WL 2624386, at *3 (D. Neb. Sept. 11, 2025) (same); *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (same); *Velasco Lopez*, 978 F.3d at 851 (finding, in assessing the first *Mathews* factor, that "[t]he deprivation [petitioner] experienced while incarcerated was, on any calculus, substantial. He was locked up in jail. He could not maintain employment or see his family or friends or others outside normal visiting hours."); *Hamdi*, 542 U.S. at 529 (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention); *Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Moreover, the Government is detaining Perez Lopez in a facility that the undersigned has already found "strongly resemble[s] penal confinement." *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 940 (D. Colo. 2025).

In light of the above, the Court concludes the first *Mathews* factor weighs heavily in favor of Perez Lopez on his Count One substantive due process claim.

2. <u>Procedural Due Process (Count Two)</u>

To resolve Count Two of the Petition, the Court applies the second and third *Mathews* factors.

Applying the second *Mathews* factor, the procedures the IJ employed carried the risk of erroneous deprivation. With respect to this factor, Perez Lopez argues that "the

risk of erroneous detention is substantial when the burden is placed on the detained person and individualized evidence is not meaningfully addressed." (ECF No. 1 at 12.) The Court agrees.

Perez Lopez takes issue with the IJ's failure to conduct the individualized, forward-looking assessment required for custody redetermination hearings under 8 U.S.C. § 1226. Not only did the IJ fail to explain what evidence from the DHS she relied on to deny Perez Lopez bond, she also refused to consider any of the evidence that he submitted. Indeed, Perez Lopez points out that the IJ did not mention "Perez Lopez's approximately nineteen years of residence; his fixed release address; [his partner's] documented sponsorship and financial support; [his partner's] repeated travel to Colorado; the community-support evidence; Perez Lopez's appearance and compliance history; or his actual conduct in timely pursuing BIA review." (ECF No. 1 at 7; *see id.* at 27–101.)

The IJ merely speculated that Perez Lopez's appeal of another IJ order would be granted and would thus disincentivize him from appearing for his removal. (ECF No. 1 at 20.) But such rank speculation falls below the individualized, forward-looking assessment required by the INA. Perez Lopez also rebuts the IJ's speculation, arguing that "[a] pending BIA appeal . . . is evidence that the noncitizen is actively pursuing lawful review and may supply a concrete incentive to remain engaged with the proceedings." (*Id.* at 10.)

Moreover, by failing to consider the evidence before her, the IJ undermined "[t]he traditional due process concern with accuracy, [which] . . . is meant to protect *the individual interest*." *Granillo Chavarria v. Baltazar*, 824 F. Supp. 3d 1170, 1175 (D.

Colo. 2026) (emphasis in original) (quoting *Benham v. Ledbetter*, 785 F.2d 1480, 1487 (11th Cir. 1986)); *see Speiser v. Randall*, 357 U.S. 513, 525–26 (1958) ("Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of producing a sufficiency of proof in the first instance . . . ."). Because the IJ failed to conduct any individualized assessment, the Court concludes that Respondents have circumvented their constitutional obligation to provide a "strong special justification" for Perez Lopez's detention. *Santillan Quiroz*, 180 F.4th at 1249.

Furthermore, the IJ should not have placed the burden of proving a negative onto Perez Lopez. At the bond hearing, the DHS argued the IJ should deny bond because Perez Lopez was a flight risk and that no amount of bond would mitigate that risk. (ECF No. 1 at 24.) Despite Perez Lopez's evidence to the contrary, the IJ accepted the DHS's conclusion, finding that Perez Lopez "does pose a risk of flight that no amount of bond can mitigate." (*Id.* at 20.) Functionally, the IJ's decision placed the burden of proving a negative onto Perez Lopez: that he was not a flight risk and that he was not dangerous. *See L.G. v. Choate*, 744 F. Supp. 3d 1172, 1183–84 (D. Colo. 2024) ("[P]roving a negative (especially a lack of danger) can often be more difficult that proving a cause for concern.") (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 31 (1st Cir. 2021)). The IJ's order does not show that DHS bore any burden of proof and "[i]t does not identify what evidence DHS proved, what facts were established to the clear-and-convincing level, or why those facts made continued detention necessary." (ECF No. 1 at 12.) The IJ's failure to hold DHS to any burden violated Perez Lopez's due process rights.

Section 1226(a) and its implementing regulations are silent as to who bears the burden of proof at a bond hearing. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19(d). But as this Court has said before and as the weight of authority of this District supports, it is the Government's burden to justify a noncitizen's continued detention at a bond hearing. *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1159 (D. Colo. 2026); *see Mendoza Hernandez v. Baltazar*, 2026 WL 2453685, at *5 (D. Colo. Aug. 21, 2026) (collecting cases); *cf. Santillan Quiroz*, 180 F.4th at 1249 ("Due process requires that, whenever the Government detains somebody, it must have a good reason for doing so. . . . If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a 'strong special justification.' ")

The Court observes that another Judge in this District has found insufficient a bond order that supplied far more reasoning than what the Court currently has before it. In *Arredondo v. Baltazar*, Judge R. Brooke Jackson of this District Court ordered a new bond hearing where the IJ issued a multi-page order but failed to set forth in its ruling "what evidence *presented by respondents* carried their burden of proof to demonstrate that movant is a danger to the community or a flight risk by clear and convincing evidence." *Cervantes Arredondo v. Baltazar*, Civil Action No. 25-cv-3040-RBJ, ECF No. 26 at 1 (emphasis in original). To be sure, the IJ in that case did consider evidence that the judge found to support denying bond. But the *Arredondo* court faulted the IJ for failing to regard which "party proffer[ed] the evidence or the order in which it is considered." (*Id.* at 8–9.) Put simply, if the procedures followed by the IJ in *Arredondo* were deficient—notwithstanding the cited record evidence in support of the decision—surely the procedures followed by the IJ in this case manifestly fail to pass Fifth

Amendment muster. Indeed, here, "[t]here is no indication . . . that the IJ . . . even placed any burden on the Government at all." *Mejia*, 2026 WL 1361514, at *2.

As to the third *Mathews* factor, it is true that the Government has an interest in ensuring noncitizens appear at future immigration proceedings and in preventing danger to the community. *Zadvydas*, 533 U.S. at 690. "It would stand to reason if a noncitizen was neither a flight risk nor dangerous, there would be no government or public interest in detention." *L.G.*, 744 F. Supp. 3d at 1185. But as stated above, the IJ refused to engage with Perez Lopez's abundant trove of documentary evidence on these issues, which strongly refuted DHS's argument that he was a flight risk.

For these reasons, the Court concludes, based on the *Mathews* factors, that Perez Lopez was not afforded the minimal indicia for due process at his bond hearing before the IJ.

**B. Remedy**

The Government declined to substantively address Perez Lopez's claims. (ECF No. 12 at 1–2.) However, it submits that the "appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order, provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) or else release Petitioner." (*Id.* at 2.)

In the Court's view, another bond hearing will not serve as adequate relief. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr.

22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* 826 F. Supp. 3d 545, 563 (D.N.J. 2026) (collecting cases).

Given this reality, the Court will order Perez Lopez's immediate release.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Order to Show Cause entered by Chief Magistrate Judge Scott T. Varholak (ECF No. 4) is MADE ABSOLUTE and Perez Lopez's Petition (ECF No. 1) is GRANTED;

2. **By no later than this Wednesday, September 23, 2026**, Respondents shall IMMEDIATELY RELEASE Perez Lopez on his own recognizance, along with all his personal belongings, and they shall facilitate Perez Lopez's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address;

3. **No onerous conditions of release shall be unilaterally imposed by Respondents on Perez Lopez**, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

4. Respondents are ENJOINED from re-arresting or re-detaining Perez Lopez unless they demonstrate, by **clear and convincing evidence** at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, Respondents shall bear the burden of proof, and Perez Lopez shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

5. Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Perez Lopez from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. Should Perez Lopez believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **October 19, 2026**. Respondents shall file a response by no later than **November 9, 2026**, and Perez Lopez shall file a reply by no later than **November 23, 2026**; and

7. Judgment shall enter in Perez Lopez's favor and against Respondents on **October 5, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 21st day of September, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge